FILED
03-02-2018
John Barrett
Clerk of Circuit Court
2018CV001809
Honorable Ellen R
Brostrom-06
Branch 06

| STATE OF WISCONSIN | CIRCUIT COURT | MILWAUKEE COUNTY |
|---|---|---|

CRAFTON MOORE
3949 N. 24th Street
Milwaukee, WI 53206-1425,

     Plaintiff,

  v.

STATE FARM FIRE AND CASUALTY COMPANY
One State Farm Plaza
Bloomington, IL 61701,

     Defendant.

Case No.: _____
Case Code:
30303 (Other Contracts);
30201 (Property Damage);
30301 (Money Judgment)

## COMPLAINT

**NOW COMES** the plaintiff, **CRAFTON MOORE**, by his attorneys, Cade Law Group LLC, and as and for his Complaint against **STATE FARM FIRE AND CASUALTY COMPANY**, allege and show to the Court as follows:

1.    Plaintiff Crafton Moore (hereinafter, "Plaintiff", "Insured" and/or "Moore") is a citizen of the State of Wisconsin who resides at 3949 N. 24th Street, Milwaukee, Wisconsin 53206-1425.

2.    Defendant State Farm Fire and Casualty Company ("State Farm") is a foreign insurance company licensed to transact business in the State of Wisconsin, with a principal place of business located at One State Farm Plaza, Bloomington, IL 61701, and, upon information and belief, its registered agent in the State of Wisconsin for service of process is Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, WI 53717.

3.     At all times relevant hereto, State Farm had in full force and effect a Landlord's Package Policy providing coverage to or in the interest of Moore, designated as policy number 99-B7-L135-6 (hereinafter, the "Policy"), which provided, among other things, indemnity coverage for loss caused by fire, for the insured residence located at 3543 N. 13th Street, Milwaukee, WI 53206 (hereinafter, the "Property"). Attached hereto and incorporated herein as **Exhibit 1** is a true and correct copy of the Policy.

4.     State Farm, through its employees, agents and representatives, had set a limit for the actual cash value of the Property at up to $151,000. Attached hereto and incorporated herein as **Exhibit 2** is a true and correct copy of the Policy Declarations Page.

5.     The Policy also provided Rental income protection coverage. *Id.*

6.     A fire occurred on or about March 4, 2017 at the Property, without fault or design of Moore as the Insured. As a result of said loss, the Property sustained substantial property damage, rendering the Property uninhabitable. Attached hereto and incorporated herein as **Exhibit 3** is a true and correct copy of an Incident Report from the Milwaukee Police department, Report #170630028.

7.     The Property, upon information and belief, is a total loss.

8.     Prior to the fire loss, Moore, as a landlord, on February 15, 2017 had evicted a tenant who resided at the Property for failure to pay rent. A Writ of Restitution was issued to Moore on March 1, 2017. *See Moore v. Grandy*, Milwaukee County Case # 2017-SC-01579.

9.     Moore made demand of State Farm to pay the actual cash value of the fire loss, as required under the Policy

2

10. Contrary to the terms, conditions and limitations of coverage set forth in the Policy, and applicable law, State Farm, through its employees, agents and representatives, have refused to pay the full amount of the loss. Instead, State Farm alleges that the fire loss purportedly was not accidental in nature. Attached hereto as **Exhibit 4** is a true and correct copy of State Farm's denial letter in which it refuses to provide payments for the fire loss.

11. State Farm also canceled the insurance policy as of March 4, 2017 without Moore's permission, consent or request. Attached hereto as **Exhibit 5** is a true and correct copy of a check from State Farm to Moore, dated February 6, 2018, purportedly for unused premiums. Although State Farm claims the Policy was cancelled as of March 4, 2017, State Farm waited eleven months until February 6, 2018 to issue a purported refund of unused premiums.

12. Moore has complied with all obligations of the Policy and has fully cooperated with State Farm's investigation of the fire.

### FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT

13. Plaintiff realleges and incorporates herein by reference, as if set forth fully herein, paragraphs 1 - 12 of the Complaint.

14. Although there is a Policy in place to provide coverage for the fire loss, State Farm refuses to pay Moore the actual cash value of the Policy, as identified in the Declarations.

15. Moore had paid State Farm all of the required premiums.

16. State Farm has failed to live up to its end of the bargain and pay Moore the actual cash value of the Policy.

3

Exhibit A

17. State Farm also has failed to pay Moore for any lost rental payments he suffered and continues to suffer as a result of the fire loss.

18. As a proximate result of State Farm's breach of the insurance contract and non-compliance with Wisconsin law governing the insurance industry, Plaintiff has suffered and will continue to suffer damages and pecuniary losses including, but not limited to, those set forth in the *ad damnum* clause herein, as well as consequential damages, but not less than $151,000.

## SECOND CLAIM FOR RELIEF – PROMISSORY ESTOPPEL

19. Plaintiff realleges and incorporates herein by reference, as if set forth fully herein, paragraphs 1 - 18 of the Complaint.

20. State Farm, through the actions of its employees, agents and representatives, promised the Plaintiff that in exchange for premiums State Farm would provide coverages, including property damage coverage, to the Property up to $151,000, knowing that said promise would reasonably be relied upon by Plaintiff.

21. That the actual cash value amount of $151,000 was a figure calculated by State Farm, through its employees, agents and representatives, to represent the Property's actual cash value based upon data available to State Farm, including, but not limited to, data summarized in the Policy.

22. That the Plaintiff reasonably relied upon State Farm's promise to Plaintiff's economic detriment.

23. That State Farm has failed to perform said promise as evidenced by State Farm's failure to pay Moore the actual cash value of the loss of $151,000.

4

24.     That State Farm is equitably estopped from taking any position or otherwise denying responsibility to Moore for the substantial losses he has incurred, and should be estopped from disregarding the actual cash value declared in the Policy declaration upon which its premium was based.

### THIRD CLAIM FOR RELIEF – BAD FAITH

25.     Plaintiff realleges and incorporates herein by reference, as if set forth fully herein, paragraphs 1 - 24 of the Complaint.

26.     By virtue of its contract of insurance with Plaintiff and applicable Wisconsin law, certain express and implied duties and obligations are owed by State Farm to its insured including, but not limited to:

    a.     A duty of good faith and fair dealing;

    b.     A duty to act in the insureds best interests;

    c.     A duty to promptly acknowledge communications with respect to the claim;

    d.     A duty to promptly and properly perform claim investigation services; a duty to attempt in good faith to effectuate a fair and equitable settlement of the claim;

    e.     A duty to provide prompt and reasonable explanation of the basis in the Policy and applicable law for any delay and/or denial of benefits; a duty to refrain from requiring the insured to institute suit to recover amounts due and owing under the Policy;

    f.     A duty to properly represent the terms and conditions of the Policy;

    g.     A duty to properly adjust property losses by methods and procedures consistent with the Policy's terms and conditions;

27.     State Farm, through the acts and omissions of its employees, agents and representatives, has breached said duties and obligations.

5

28. That despite the reasonable efforts, cooperation and compliance of the Insured, State Farm has intentionally, wantonly, willfully or with reckless disregard for the rights of the Policyholder, adjusted this claim in an objectively unreasonable manner and without a reasonable or fairly debatable basis for doing so, thus constituting bad faith.

29. As a direct and proximate result of the afore-stated conduct, Moore is entitled to recovery of all economic loss resulting from said conduct, and punitive damages as further described in the *ad damnum* clause of this Complaint.

WHEREFORE, Moore, as Plaintiff, demands judgment against State Farm as follows:

1. For judgment in the amount of the actual cash value of damages sustained;

2. For judgment awarding any and all other benefits conferred by the Policy, including lost rental income;

3. For double the amount of Moore's actual pecuniary loss pursuant to applicable Wisconsin Administrative Code and Statutory provisions;

4. For extra-contractual damages in the amount of the Plaintiff's actual reasonable attorney's fees, costs and disbursements;

5. For punitive damages;

6. For prejudgment interest pursuant to Wisconsin Statues § 628.46 and for post-judgment interest;

7. For equitable relief estopping State Farm from abrogating the actual cost value limits of the insurance policy;

6

8.   For all other statutory, taxable costs, and other relief that the Court deems

just and equitable.

**PLAINTIFF HEREBY DEMANDS TRIAL BY A JURY OF TWELVE PERSONS**

Dated this 2nd day of MARCH, 2018

                **CADE LAW GROUP LLC**

By: _____

                Nathaniel Cade, Jr., SBN 1028115
                P.O. Box 170887
                Milwaukee, WI 53217
                (414) 255-3802 (phone)
                (414) 255-3804 (fax)
                nate@cade-law.com

                Attorneys for Plaintiff

# EXHIBIT 1



## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Fire and Casualty Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 99-B7-L135-6 including any endorsements, if applicable, for the policy term(s) JAN 24 2017 to JAN 24 2018 and insuring MOORE, CRAFTON based on available records.

The policy was in effect on the loss date of MAR 04 2017.

Ranee Hellbusch
Underwriter
Date: April 4, 2017

## FE-2427 RENTAL DWELLING POLICY ENDORSEMENT (Wisconsin)

### SECTION I – ADDITIONAL COVERAGES

The following is added:

12. **Tear Out.** If a Loss Insured to Coverage A property is caused by water or steam escaping from a system or appliance, we will also pay the reasonable cost you incur to tear out and replace only that particular part of the building necessary to gain access to the specific point of that system or appliance from which the water or steam escaped. We will not cover the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

### SECTION I – LOSSES NOT INSURED

Item 1.h. is replaced by the following:

h. continuous or repeated seepage or leakage of water or steam from a:

   (1) heating, air conditioning or automatic fire protective sprinkler system;

   (2) household appliance; or

   (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

   which occurs over a period of time;

### SECTION I – CONDITIONS

The following language under **Loss Settlement**:

We will pay the actual cash value of the damage to the buildings, up to the policy limit, until actual repair or replacement is completed.

You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

wherever located in the policy or any endorsement attached to the policy, is deleted in its entirety and replaced by:

Until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the building, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the building;

When the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the building, or an amount up to the applicable

limit of liability shown in the Declarations, whichever is less; and

To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the building within two years after the date of loss, and notify us within 30 days after the work has been completed.

### SECTION I AND SECTION II – CONDITIONS

Item 8. is replaced by the following:

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

      (1) Applicable to SECTION I – YOUR PROPERTY:

      If any **insured** to or for whom **we** make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That **insured** must do everything necessary to secure our rights and must do nothing after loss to impair them. But an **insured** may waive in writing before a loss all rights of recovery against any person.

      (2) Applicable to SECTION II – YOUR LIABILITY:

      If any **insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. An **insured** must do nothing after loss to impair them. At our request, an **insured** will bring suit or transfer those rights to us and help us enforce them.

      Subrogation does not apply under Section II to Premises Medical Payments.

   b. **Reimbursement.**

      If we make payment under this policy and any **insured** to or for whom **we** make payment recovers or has recovered from another person or organization, then the **insured** to or for whom we make payment must:

      (1) hold in trust for **us** the proceeds of any recovery; and

      (2) reimburse us to the extent of our payment.

   c. Our right to recover our payments applies only after you have been fully compensated for your loss.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

The following condition is added:

12. **Change of Policy Address.** We may change the named insured's policy address as shown in the **Declarations** and in our records to the most recent address provided to us by:

    a.  you; or

    b.  the United States Postal Service.

FE-2427

## OPTIONAL POLICY PROVISIONS

### Option RC – Replacement Cost – Contents

Item b. (2) is replaced by the following:

    (2)  Loss to property not repaired or replaced within two years after the loss will be settled on an actual cash value basis.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

# FE-3650 ACTUAL CASH VALUE ENDORSEMENT

The following is added to any provision which uses the term "actual cash value":

Actual cash value means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

1. materials, including any tax;

2. labor, including any tax; and

3. overhead and profit;

are subject to depreciation.

The depreciation deduction may include such considerations as:

1. age;

2. condition;

3. reduction in useful life;

4. obsolescence; and

5. any pre-loss damage including wear, tear, or deterioration;

of the damaged part of the property.

All other policy provisions apply.

FE-3650

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

# FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT

## DEFINITIONS

In all policies, the following definition is added:

"**fungus**" means any type or form of fungi, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

## SECTION I - LOSSES NOT INSURED

In SPECIAL FORM 3 policies only, item 1.j. is replaced by the following:

j.   rust, or wet or dry rot;

The following is added to item 2. of Losses Not Insured in SPECIAL FORM 3 policies or under Losses Not Insured in BASIC MODIFIED REPLACEMENT COST - FORM 1 policies:

**Fungus**, including the growth, proliferation, spread or presence of **fungus**, and including:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by **fungus**;

(2) any remediation of **fungus**, including the cost or expense to:

(a) remove or clean the **fungus** from covered property or to repair, restore or replace that property;

(b) tear out and replace any part of the building or other property as needed to gain access to the **fungus**;

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the **fungus**; or

(d) remove any property to protect it from the presence of or exposure to **fungus**;

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

## SECTION II - EXCLUSIONS

In all policies, the following exclusion is added to item 1.:

l.   any:

(1) **bodily injury, personal injury, or property damage** arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus** at or from any source or location; or

(2) loss, cost or expense arising out of any:

(a) request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate or dispose of or in any way respond to or assess the effects of **fungus**; or

(b) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of **fungus**.

All other policy provisions apply.

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 13 of 53   Document 1   Exhibit A

## FE-5801 MANDATORY REPORTING ENDORSEMENT

The following **CONDITION** is added:

**Duties of an Injured Person – Coverage M – Mandatory Reporting.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

a. provide us with any required authorizations; and

b. submit to us all information we need to comply with state or federal law.

FE-5801

©, Copyright, State Farm Mutual Automobile Insurance Company, 2009

# DEBRIS REMOVAL ENDORSEMENT

## SECTION I - ADDITIONAL COVERAGES

**Debris Removal** is replaced by the following:

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property when coverage is afforded for the peril causing the loss. This expense is included in the limit applying to the damaged property.

   We will pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has damaged property covered under Coverage A.

   When the amount payable for the property damage plus the debris removal expense exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense.

**All other policy provisions apply.**

FE-7540
(9/89)

# AMENDATORY ENDORSEMENT
## (Wisconsin)

Under **SECTION I** of this policy, any restriction or limitation of coverage related to the vacancy or unoccupancy of the dwelling will not apply unless the dwelling has been vacant or unoccupied for more than 60 consecutive days immediately before the loss.

## SECTION I - LOSSES NOT INSURED

"Ordinance or Law" is deleted.

## SECTION I - CONDITIONS

The condition, "**Your Duties After Loss**", is revised to require notice of loss as soon as reasonably possible.

In the Condition "**Loss Payment**", loss will be payable 30 days after we receive your proof of loss and not 60 days as stated in the Condition.

## SECTION II - CONDITIONS

The following amends the Condition "**Suit Against Us**":

If an action for **bodily injury** or **property damage** occurring in the state of Wisconsin is brought in Wisconsin, this Condition is amended to read:

No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance by you with all the terms of this policy.

Any person or organization or the legal representative thereof shall be entitled to recover under this policy to the extent of the insurance afforded by this policy. Bankruptcy or insolvency of you or your estate shall not relieve us of any of our obligations hereunder.

The first subparagraph of the Condition "**Duties After Loss**" is changed to read:

In the event of an **occurrence**, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to us or any of our authorized agents within 20 days following the date of the **occurrence**; provided, that failure to give such notice within the time specified shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that such notice was given as soon as reasonably possible. You shall promptly take at your expense all reasonable steps to prevent other **bodily injury** or **property damage** from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

The following two Conditions are added:

**Misrepresentation and Warranty**. No misrepresentation or breach of affirmative warranty made by the **named insured** or in his behalf in the negotiation of this policy affects this Company's obligation under this policy unless this Company relies on it and it is either material or made with intent to deceive, or unless the facts misrepresented or falsely warranted contribute to the loss. No failure of a condition prior to the loss and no breach of a promissory warranty affects this Company's obligation under this policy unless it exists at the time of the loss and either increases the risk at the time of loss or contributes to the loss. The provisions of this condition do not apply to failure to tender payment of premium.

**Changes**. The terms of this policy shall not be changed, except by endorsement issued to form a part of this policy. Knowledge of our agent shall be our knowledge. Any fact which breaches a condition of this policy and is known to the agent prior to loss shall not void the policy or defeat a recovery thereon in the event of a loss.

## SECTION I AND SECTION II - CONDITIONS

The following is added to paragraph "c" of the Condition "**Cancellation**":

Your refund when you request cancellation will be the full pro rata refund reduced by 10%. We will retain a minimum of $10.

The following is added to the Condition "**Subrogation**":

Our right to recover our payments applies only after you have been fully compensated for the loss.

The reference to 30 days in the **Non-Renewal and Cancellation** Conditions is changed to 60 days.

The countersignature of a duly authorized Agent of this Company is not required for this policy to be valid.

**State Farm Insurance Companies**
One State Farm Plaza
Bloomington, Illinois 61710

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 16 of 53   Document 1   Exhibit A



State Farm®
**Rental Dwelling**
**Policy**

FP-8103.3

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 17 of 53   Document 1Exhibit A

# TABLE OF CONTENTS

## DECLARATIONS
Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

Begins on Page

AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

SECTION I - YOUR PROPERTY
   COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
      Coverage A - Dwelling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
      Coverage B - Personal Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
      Coverage C - Loss of Rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
      Additional Coverages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
      Inflation Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
   LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
   LOSSES NOT INSURED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
   CONDITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

SECTION II - YOUR LIABILITY
   COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
      Coverage L - Business Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
      Coverage M - Premises Medical Payments. . . . . . . . . . . . . . . . . . . . . . . . . . . .10
   EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
   ADDITIONAL COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
   CONDITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

SECTION I AND SECTION II - CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

OPTIONAL POLICY PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983.
And also.
Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1975, 1977.

FP-8103.3

Printed in U.S.A.

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 18 of 53   Document 1   Exhibit A

# RENTAL DWELLING POLICY - SPECIAL FORM 3

## AGREEMENT

We agree to provide the insurance described in this policy. You agree to pay premiums when due and comply with the provisions of this policy.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the Declarations. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the Declarations.

Certain words and phrases are defined as follows:

1. "bodily injury" means bodily harm, sickness or disease. This includes required care, loss of services and death resulting therefrom. Bodily injury does not include any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any insured to any other person. It also does not include the exposure to any such disease, bacteria, parasite, virus, or other organism by any insured to any other person.

2. "contract" means any written contract or agreement wherein the named insured has expressly assumed liability for damages to which this policy applies.

3. "Declarations" means the policy Declarations, any amended Declarations, the most recent renewal notice or certificate, an Evidence of Insurance form, or any endorsement changing any of these.

4. "insured" means:

   a. if the named insured is designated in the Declarations as an individual and is a sole proprietor, the named insured and spouse;

   b. if the named insured is designated in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof;

   c. if the named insured is designated in the Declarations as other than an individual, partnership or joint venture, the organization trustees, directors or governors or stockholder thereof while acting within the scope of their duties;

   d. any employee of the named insured while acting within the scope of that employment;

   e. any person or organization while acting as real estate manager for the named insured.

   The insurance afforded applies separately to each insured against whom claim is made, or suit is brought, except with respect to the limit of our Company's liability.

   This insurance does not apply to bodily injury or personal injury or property damage arising out of the conduct of any partnership or joint venture which is not designated in this policy as a named insured.

5. "insured premises" means:

   a. the residence premises;

   b. one or two family premises of which you acquire ownership or control and for which you report your intention to insure under this policy within 30 days after acquisition;

   c. the ways immediately adjoining on land; and

   d. one or two family dwelling premises alienated by any insured if possession has been given to others.

6. "motor vehicle", when used in Section II of this policy, means:

   a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured premises is not a motor vehicle;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 6.a. is not a motor vehicle;

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 19 of 53   Document 1   Exhibit A

c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by any **insured** and designed for recreational use off public roads, while off an **insured premises**. A motorized golf cart while used for golfing purposes is not a **motor vehicle;**

d. a motorized bicycle, tricycle or similar type of equipment owned by any **insured** while off an **insured premises;**

e. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b., 6.c., or 6.d.

7. **"named insured"** means the person or organization named in the **Declarations** of this policy.

8. **"occurrence"**, when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury;**

b. **property damage;** or

c. **personal injury;**

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

9. **"personal injury"** means injury arising out of one or more of the following offenses:

a. false arrest, detention or imprisonment or malicious prosecution;

b. libel, slander or defamation of character; or

c. invasion of privacy, wrongful eviction or wrongful entry.

10. **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not considered to be **property damage.**

11. **"residence premises"** means the one or two family dwelling, other structures, and grounds which is shown in the **Declarations**.

# SECTION I - COVERAGES

## COVERAGE A - DWELLING

We cover:

1. the dwelling on the **residence premises** shown in the **Declarations** used principally as a private residence, including structures attached to the dwelling;

2. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises;**

3. wall-to-wall carpeting attached to the dwelling on the **residence premises;** and

4. outdoor antennas.

Except as specifically provided in the **SECTION I, ADDITIONAL COVERAGES**, for Land, we do not cover land or any costs required to replace, rebuild, stabilize or otherwise restore the land.

**Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

We do not cover other structures:

1. not permanently attached to or otherwise forming a part of the realty;

2. used in whole or in part for commercial, manufacturing or farming purposes; or

3. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

## COVERAGE B - PERSONAL PROPERTY

We cover personal property owned or used by any **insured** which is rented or held for rental with the **residence premises** or used for the maintenance of the **residence premises**. This coverage applies only while the personal property is on the **residence premises** or temporarily off premises for repairs.

FORM 3

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 20 of 53   Document 1   Exhibit A

**Property Not Covered.** We do not cover:

1. articles separately described and specifically insured in this or any other insurance;

2. animals, birds or fish;

3. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those used solely for the service of the **residence premises** and not licensed for use on public highways;

4. watercraft, including motors, equipment and accessories;

5. aircraft and parts;

6. outdoor signs.

## COVERAGE C - LOSS OF RENTS

The limit of liability for Coverage C is the total limit for all the following coverages.

1. **Fair Rental Value.** If a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental but not exceeding 12 consecutive months from the date of loss. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

2. **Prohibited Use.** If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a Loss Insured in this policy, we cover any resulting Fair Rental Value loss for a period not exceeding two weeks during which use is prohibited.

   We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay the reasonable expense incurred by you in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

2. **Reasonable Repairs.** We will pay the reasonable cost incurred by you of repairing damage to covered property necessary to protect the property from further damage or loss, provided coverage is afforded for the peril causing the loss. This coverage does not increase the limit of liability applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following Losses Insured: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief or Theft. The limit of liability for this coverage shall not exceed 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns nor more than $500 for any one tree, shrub or plant. This coverage may increase the limit of liability otherwise applicable. We do not cover property grown for business purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by **contract** or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for direct loss from any cause. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Personal Effects.** We will pay up to $500 for loss at the **residence premises** caused by a Loss Insured to personal effects of others while such property is in your

3

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 21 of 53   Document 1   Exhibit A

care, custody or control. This coverage is subject to the limitations and exclusions applicable to Coverage B - Personal Property. This coverage is limited to $100 per person and does not increase the limit of liability applying to Coverage B - Personal Property.

7. **Burglary.** We will pay for loss of personal property owned or used by any **insured** which is rented or held for rental with the **residence premises**, when the loss is from a known location within a building on the **residence premises** when it is probable that the property has been stolen and there is visible evidence of forcible entry to or forcible exit from that building. This coverage does not increase the limit of liability applying to Coverage B - Personal Property.

8. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

9. **Land.** We will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling sustaining a covered loss. This may increase the limit applying to the property.

10. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a. volcanic blast or airborne shock waves;

    b. ash, dust or particulate matter; or

    c. lava flow.

    We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

    One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limits applying to the damaged property.

11. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

    a. fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, volcanic action, falling objects, weight of ice, snow or sleet, water damage, breakage of building glass, all only as insured against in this policy;

       (1) falling objects does not include loss of or damage to:

           (a) personal property in the open; or

           (b) the interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object;

       (2) water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam;

    b. hidden decay;

    c. hidden insect or vermin damage;

    d. weight of contents, equipment, animals or people;

    e. weight of ice, snow, sleet or rain which collects on a roof; or

    f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

    Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

4

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 22 of 53   Document 1   Exhibit A

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit applying to the damaged property.

## INFLATION COVERAGE

The limits of liability shown in the Declarations for Coverages A and B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the Declarations.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A and Coverage B separately.

The limits of liability will not be reduced to less than the amounts shown in the Declarations.

If during the term of this policy, the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I - LOSSES INSURED

### COVERAGE A - DWELLING AND COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to the property described in Coverage A and Coverage B, except as provided in Section I - Losses Not Insured.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for loss to the property described in Coverage A and Coverage B either consisting of, or directly and immediately caused by, one or more of the following:

   a. collapse, except as specifically provided in SECTION I, ADDITIONAL COVERAGES for Collapse;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

   e. theft of any property which is not actually part of any building or structure;

   f. mysterious disappearance;

   g. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   h. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

5

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 23 of 53   Document 1   Exhibit A

which occurs over a period of time and results in deterioration, rust, mold, or wet or dry rot. If loss is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

i. wear, tear, marring, scratching, deterioration, inherent vice, latent defect and mechanical breakdown;

j. rust, mold, or wet or dry rot;

k. contamination;

l. smog, smoke from agricultural smudging or industrial operations;

m. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

n. birds, vermin, rodents, insects or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals.

However, we do insure for any ensuing loss from items a. through n. unless the loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion.

Earth movement also includes volcanic explosion or lava flow, except as specifically provided in SECTION I. ADDITIONAL COVERAGES for Volcanic Action.

We do insure for any direct loss by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing materials resulting from earth movement.

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) water which backs up through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for direct loss by fire, explosion, or theft resulting from water damage.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Loss Insured.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss

6

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 24 of 53   Document 1   Exhibit A

caused by fire, explosion, or smoke. However, we do insure for direct loss by fire resulting from the nuclear hazard.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises.

However, we do insure for any ensuing loss from items a. and b. unless the ensuing loss is itself a Loss Not Insured by this Section.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

a. to the **insured** for an amount greater than the insured's interest; nor

b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

a. give immediate notice to us or our agent, and in case of theft, vandalism, or malicious mischief, also to the police;

b. protect the property from further damage or loss, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

c. prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require:

(1) exhibit the damaged property;

(2) provide us with records and documents we request and permit us to make copies; and

(3) submit to examinations under oath and subscribe the same;

e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) the time and cause of loss;

(2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged building and detailed estimates for repair of the damage;

(6) an inventory of damaged personal property described in 2.c.;

(7) records supporting the fair rental value loss.

7

FORM 3

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Personal property and structures that are not buildings at actual cash value, up to the applicable limit of liability, at the time of loss. There may be deduction for depreciation. We will not pay an amount exceeding that necessary to repair or replace;

b. Carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings, at actual cash value, up to the applicable limit of liability, at the time of loss. We will not pay an amount exceeding that necessary to repair or replace;

c. Buildings under Coverage A at replacement cost without deduction for depreciation, subject to the following:

(1) We will not pay more than the $10,000 limit on Land as provided in **SECTION I, ADDITIONAL COVERAGES.**

(2) We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

(a) the limit of liability under this policy applying to the building;

(b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

(c) the amount actually and necessarily spent to repair or replace the damaged building.

(3) We will pay the actual cash value of the damage to the buildings, up to the policy limit, until actual repair or replacement is completed.

(4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

4. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Loss Insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the date of loss or damage.

9. **Our Option.** We may repair or replace any part of the property damaged or stolen with equivalent property.

8

FORM 3

 Exhibit A

Any property we pay for or replace becomes our property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by any insured.

12. **Mortgage Clause.** The word "mortgagee" includes trustee.

   a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

   b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

      (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

      (2) pays any premium due under this policy on demand if you have neglected to pay the premium;

      (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of

your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

   c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

   d. If we pay the mortgagee for any loss and deny payment to you:

      (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

      (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

   e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - BUSINESS LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury, personal injury,** or **property damage** to which this coverage applies, caused by an **occurrence,** and which arises from the ownership, maintenance, or use of the **insured premises,** we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence,** equals our limit of liability.

9

FORM 3

The total limit of the Company's liability for all **occurrences** in any one policy year shall not exceed the annual aggregate limit shown in the Declarations for Coverage L - Business Liability.

## COVERAGE M - PREMISES MEDICAL PAYMENTS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury** which arises out of a condition on the **insured premises** or for which the **insured** is provided **bodily injury** liability coverage under this policy. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services.

## SECTION II - EXCLUSIONS

1. **Coverage L - Business Liability and Coverage M - Premises Medical Payments** do not apply to:

   a. **bodily injury, personal injury, or property damage:**

      (1) which is either expected or intended by an **insured**; or

      (2) to any person or property which is the result of willful and malicious acts of an **insured**;

   b. **bodily injury, personal injury, or property damage** arising out of the rendering or failing to render professional services;

   c. **bodily injury, personal injury, or property damage** arising out of the ownership, maintenance, use, loading or unloading of:

      (1) aircraft;

      (2) any **motor vehicle** owned or operated by, or rented or loaned to any **insured**; or

      (3) any watercraft owned by or operated by, or rented or loaned to any **insured**;

   d. **bodily injury, personal injury, or property damage** arising out of:

      (1) the entrustment by any **insured** to any person;

      (2) the negligent supervision by any **insured** of any person;

      (3) any liability statutorily imposed on any **insured**; or

      (4) any liability assumed through an unwritten or written agreement by any **insured**;

   with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** (or any other motorized land conveyance) which is not covered under Section II of this policy;

   e. **bodily injury, personal injury, or property damage** caused directly or indirectly by war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

   f. **bodily injury, personal injury, or property damage** arising out of premises, other than the **insured premises**, or to liability assumed by the **insured** under any **contract** or agreement relating to such premises;

   g. to **bodily injury** or property damage for which the **insured** may be held liable:

      (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages; or

      (2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed:

         (a) by, or because of the violation of any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverages; or

         (b) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or

Case 2:18-cv-00539-NJ    Filed 04/06/18    Page 28 of 53    Document 1   Exhibit A

which causes or contributes to the intoxication of any person;

but part (b) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in (2) above;

h. the legal liability of any insured to:

(1) any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured;

(2) any person who makes a claim because of bodily injury or property damage to any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured;

i. bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, spill, release or escape of pollutants:

(1) at or from premises owned, rented or occupied by the named insured;

(2) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;

(3) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or

(4) at or from any site or location on which the named insured, employee or any contractor or subcontractor working directly or indirectly on behalf of the named insured is performing operations:

(a) if the pollutants are brought on or to the site or location in connection with such operations; or

(b) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Subparagraphs (1) and (4)(a) of this exclusion do not apply to bodily injury or property damage caused by heat, smoke or fumes which result from a hostile fire or poisoning or asphyxiation due to escape of fumes from a furnace or flue because of a malfunction of the furnace or flue.

In addition, Coverage L and Coverage M do not apply to loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants;

As used in this exclusion:

"hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

"pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

"waste" includes materials to be recycled, reconditioned or reclaimed.

j. bodily injury to an employee of the insured arising out of and in the course of employment by the insured or the spouse, child, parent, brother or sister of that employee as a consequence of employment of that employee by the insured.

This exclusion applies:

(1) whether the insured may be liable as an employer or in any other capacity; and

11                                              FORM 3

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 29 of 53   Document 1   Exhibit A

(2) to any obligation to share damages with or repay someone else who must pay damages because of the injury;

k. **bodily injury** to you or any **insured** and if residents of your household:

(1) your relatives;

(2) any other person under the age of 21 who is in the care of an **insured**.

2. **Coverage L - Business Liability,** does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten **contract** or agreement, or by **contract** or agreement in connection with any business of the **insured** other than the rental of the **insured premises**;

b. **property damage** to property owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of the **insured**;

d. **bodily injury** or **personal injury** to any person eligible to receive any benefits required to be provided or voluntarily provided by the **insured** under any workers' or workmen's compensation, non-occupational disability or occupational disease law;

e. **bodily injury, personal injury,** or **property damage** for which any **insured** under this policy is also an **insured** under a nuclear energy liability policy or would be an **insured** but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f. **personal injury** caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any **insured;**

g. **personal injury** sustained by any person as a result of an offense directly or indirectly related to the employment of the person by the **insured;**

h. **personal injury** arising out of any publication or utterance in item b. of the definition of **personal injury:**

(1) if the first injurious publication or utterance of the same or similar material by or on behalf of the **insured** was made prior to the effective date of this insurance; or

(2) concerning any business or services made by or at the direction of any **insured** with knowledge of the falsity;

i. **property damage** or **personal injury** to premises you sell, give away or abandon, if the **property damage,** or **personal injury** arises out of those premises.

3. **Coverage M - Premises Medical Payments** does not apply to **bodily injury:**

a. to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers' or workmen's compensation, non-occupational disability or occupational disease law;

b. from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

c. to any **insured,** any tenant or other person regularly residing on the **insured premises** or to any employees of any of the foregoing if the **bodily injury** arises out of or in the course of their employment;

d. to any person engaged in maintenance and repair of the **insured premises** or alteration, demolition or new construction at such premises.

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 30 of 53   Document 1   Exhibit A

# SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses incurred by us and costs taxed against any insured in any suit we defend;

   b. premiums on bonds required in a suit defended by us, but not for bond amounts greater than the limit of liability for Coverage L. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses incurred by any **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting us in the investigation or defense of any claim or suit;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any **insured for bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

# SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense payable for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the insured shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured**;

      (2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against any person or organization who may be liable to any **insured**;

      (3) the conduct of suits and attend hearings and trials;

      (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. the **insured** shall not, except at the insured's own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage M - Premises Medical Payments.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

13

FORM 3

c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M - Premises Medical Payments.** Payment under this coverage is not an admission of liability by any insured or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have any right to join us as a party to any action against any insured. Further, no action with respect to Coverage L shall be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of any Insured.** Bankruptcy or insolvency of any insured shall not relieve us of any of our obligations under this policy.

8. **Other Insurance - Coverage L - Business Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or bodily injury, personal injury, or property damage under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice:

   (1) When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy or if the risk has changed substantially since the policy was issued. We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary by notifying you at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request can-

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 32 of 53   Document 1   Exhibit A

cellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** Any **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, any **insured** shall sign and deliver all related papers and cooperate with us in any reasonable manner.

Subrogation does not apply under Section II to Premises Medical Payments.

9. **Death.** If any person named in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

11. **Inspection and Audit.** We shall be permitted but not obligated to inspect your property and operations at any time. However, our right to inspect or our actual inspection and report shall not constitute an undertaking on your behalf or for your benefit or the benefit of others to determine or warrant that the property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

We may examine and audit your books and records at any time during the policy period and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

## OPTIONAL POLICY PROVISIONS

Each Optional Provision applies only as indicated in the Declarations or Extension Certificate.

**Option AI - Named Additional Insured.** The definition of insured in this policy includes the person or organization named in the **Declarations** as an additional insured or whose name is on file with us with respect to:

1. Section I: **Coverage A - Dwelling;**

2. Section II: **Coverage L - Business Liability** and **Coverage M - Premises Medical Payments** but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to any employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations.**

**Option RC - Replacement Cost - Contents.** Under SECTION I - CONDITIONS, items a. and b. of the Loss Settlement Condition are replaced with the following:

a. (1) Fences and the following personal property at actual cash value at the time of loss:

(a) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(b) articles whose age or history contribute substantially to their value including, but not lim-

FORM 3

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 33 of 53   Document 1  Exhibit A

ited to, memorabilia, souvenirs and collectors items;

(c) property not useful for its intended purpose.

(2) We will not pay:

(a) an amount exceeding that necessary to repair or replace the property; or

(b) an amount in excess of the limit of liability applying to the property.

b. Other personal property, carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings, and other structures (except fences) that are not buildings under Dwelling Extension, at the cost of repair or replacement

at the time of loss without deduction for depreciation, subject to the following:

(1) We will pay the cost of repair or replacement but not exceeding the smallest of the following amounts:

(a) replacement cost at time of loss;

(b) the full cost of repair;

(c) any special limit of liability described in the policy; or

(d) any applicable Coverage A or Coverage B limit of liability.

(2) Loss to property not repaired or replaced within one year after the loss will be settled on an actual cash value basis.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Lynne M. Youell*  Secretary  *Michael F Tipson*  President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

16         FORM 3

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 34 of 53   Document 1   Exhibit A

**State Farm Fire and Casualty Company**
A Stock Company With Home Offices in Bloomington, Illinois

P.O. Box 82542
Lincoln, NE 68501-2542

**Named Insured**

AT2

001027  0046        H-05-6093-FABD        R  F

MOORE, CRAFTON
3949 N 24TH ST
MILWAUKEE WI  53206-1425

ᵢₗₗₗₗₗₗₗₗ

# DECLARATIONS PAGE

| Policy Number | 99-B7-L135-6 |
|---|---|

| Policy Period | Effective Date | Expiration Date |
|---|---|---|
| 12 Months | JAN 24 2017 | JAN 24 2018 |

The policy period begins and ends at 12:01 am standard time at the residence premises.

## ENTAL DWELLING POLICY- SPECIAL FORM 3

tomatic Renewal - If the policy period is shown as 12 months, this policy will be renewed automatically subject to the miums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the rtgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

:ation of Premises
I3 N 13TH ST
.WAUKEE WI 53206-3049

ned Insured: Individual

| verages & Property | Limits of Liability | Inflation Coverage Index: 243.0 |
|---|---|---|
| Section I | | Deductibles - Section I |
| Dwelling | $   151,000 | Basic    1%           $    1,510 |
| Dwelling Extension | $    15,100 | |
| Personal Property | $     7,550 | |
| Loss of Rents | Actual Loss | |
| | | |
| Section II | | |
| Business Liability | | In case of loss under this policy, the deductibles will be applied |
| (Each Occurrence) | $   300,000 | per occurrence and will be deducted from the amount of the |
| Annual Aggregate | $   600,000 | loss. Other deductibles may apply - refer to policy. |
| Medical Payments | | |
| (Each Person) | $     1,000 | |

| rms, Options, & Endorsements | | Policy Premium | $    549.00 |
|---|---|---|---|
| ecial Form 3 | FP-8103.3 | Discounts Applied: | |
| ntal Dwelling Endorsement | FE-2427 | Home Alert | |
| dual Cash Value Endorsement | FE-3650 | Utility Rating Cr | |
| nendatory Endorsement | FE-8249.2 | | |
| ngus (Including Mold) Excl | FE-5722 | | |
| ebris Removal Endorsement | FE-7540 | | |
| andatory Reporting Endorsemnt | FE-5801 | | |

━━━━━━━━━━  Other limits and exclusions may apply - refer to your policy  ━━━━━━━━━━

ir policy consists of this page, any endorsements
I the policy form. Please keep these together.

8001.3C

**LEONARD CRATIC JR**
414-527-4288

I34   1 51  I
8,T,R

99-B7-L135-6 ( 3838) 001027

## FE-2427 RENTAL DWELLING POLICY ENDORSEMENT (Wisconsin)

### SECTION I – ADDITIONAL COVERAGES

The following is added:

12. **Tear Out.** If a Loss Insured to Coverage A property is caused by water or steam escaping from a system or appliance, we will also pay the reasonable cost you incur to tear out and replace only that particular part of the building necessary to gain access to the specific point of that system or appliance from which the water or steam escaped. We will not cover the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

### SECTION I – LOSSES NOT INSURED

Item 1.h. is replaced by the following:

h. continuous or repeated seepage or leakage of water or steam from a:

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time;

### SECTION I – CONDITIONS

The following language under **Loss Settlement**:

We will pay the actual cash value of the damage to the buildings, up to the policy limit, until actual repair or replacement is completed.

You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

wherever located in the policy or any endorsement attached to the policy, is deleted in its entirety and replaced by:

Until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the building, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the building;

When the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the building, or an amount up to the applicable

limit of liability shown in the Declarations, whichever is less; and

To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the building within two years after the date of loss, and notify us within 30 days after the work has been completed.

### SECTION I AND SECTION II – CONDITIONS

Item 8. is replaced by the following:

8. **Subrogation and Reimbursement.**

a. **Subrogation.**

(1) Applicable to **SECTION I – YOUR PROPERTY:**

If any **insured** to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That **insured** must do everything necessary to secure our rights and must do nothing after loss to impair them. But an **insured** may waive in writing before a loss all rights of recovery against any person.

(2) Applicable to **SECTION II – YOUR LIABILITY:**

If any **insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. An **insured** must do nothing after loss to impair them. At our request, an **insured** will bring suit or transfer those rights to us and help us enforce them.

Subrogation does not apply under Section II to Premises Medical Payments.

b. **Reimbursement.**

If we make payment under this policy and any **insured** to or for whom we make payment recovers or has recovered from another person or organization, then the **insured** to or for whom we make payment must

(1) hold in trust for us the proceeds of any recovery; and

(2) reimburse us to the extent of our payment.

c. Our right to recover our payments applies only after you have been fully compensated for your loss.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

The following condition is added:

12. **Change of Policy Address.** **We** may change the named insured's policy address as shown in the **Declarations** and in our records to the most recent address provided to us by:

a. **you**; or

b. the United States Postal Service.

FE-2427

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

**OPTIONAL POLICY PROVISIONS**

**Option RC – Replacement Cost – Contents**

Item b. (2) is replaced by the following:

(2) Loss to property not repaired or replaced within two years after the loss will be settled on an actual cash value basis.

All other policy provisions apply.

## FE-3650 ACTUAL CASH VALUE ENDORSEMENT

The following is added to any provision which uses the term "actual cash value":

Actual cash value means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

1. materials, including any tax;

2. labor, including any tax; and

3. overhead and profit;

are subject to depreciation.

The depreciation deduction may include such considerations as:

1. age;

2. condition;

3. reduction in useful life;

4. obsolescence; and

5. any pre-loss damage including wear, tear, or deterioration;

of the damaged part of the property.

All other policy provisions apply.

FE-3650

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

FE-8249.2
(5/88)

# AMENDATORY ENDORSEMENT
## (Wisconsin)

Under **SECTION I** of this policy, any restriction or limitation of coverage related to the vacancy or unoccupancy of the dwelling will not apply unless the dwelling has been vacant or unoccupied for more than 60 consecutive days immediately before the loss.

## SECTION I - LOSSES NOT INSURED

"Ordinance or Law" is deleted.

## SECTION I - CONDITIONS

The condition, "Your Duties After Loss", is revised to require notice of loss as soon as reasonably possible.

In the Condition **"Loss Payment"**, loss will be payable 30 days after we receive your proof of loss and not 60 days as stated in the Condition.

## SECTION II - CONDITIONS

The following amends the Condition "Suit Against Us":

If an action for **bodily injury or property damage** occurring in the state of Wisconsin is brought in Wisconsin, this Condition is amended to read:

No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance by you with all the terms of this policy.

Any person or organization or the legal representative thereof shall be entitled to recover under this policy to the extent of the insurance afforded by this policy. Bankruptcy or insolvency of you or your estate shall not relieve us of any of our obligations hereunder.

The first subparagraph of the Condition "Duties After Loss" is changed to read:

In the event of **an occurrence**, written notice containing particulars sufficient to identify the **insured** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the **insured** to us or any of our authorized agents within 20 days following the date of the **occurrence**; provided, that failure to give such notice within the time specified shall not invalidate any claim made by the

insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that such notice was given as soon as reasonably possible. You shall promptly take at your expense all reasonable steps to prevent other **bodily injury or property damage** from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

The following two Conditions are added:

**Misrepresentation and Warranty.** No misrepresentation or breach of affirmative warranty made by the named **insured** or in his behalf in the negotiation of this policy affects this Company's obligation under this policy unless this Company relies on it and it is either material or made with intent to deceive, or unless the facts misrepresented or falsely warranted contribute to the loss. No failure of a condition prior to the loss and no breach of a promissory warranty affects this Company's obligation under this policy unless it exists at the time of the loss and either increases the risk at the time of loss or contributes to the loss. The provisions of this condition do not apply to failure to tender payment of premium.

**Changes.** The terms of this policy shall not be changed, except by endorsement issued to form a part of this policy. Knowledge of our agent shall be our knowledge. Any fact which breaches a condition of this policy and is known to the agent prior to loss shall not void the policy or defeat a recovery thereon in the event of a loss.

## SECTION I AND SECTION II - CONDITIONS

The following is added to paragraph "c" of the Condition **"Cancellation"**:

Your refund when you request cancellation will be the full pro rata refund reduced by 10%. We will retain a minimum of $10.

The following is added to the Condition **"Subrogation"**:

Our right to recover our payments applies only after you have been fully compensated for the loss.

The reference to 30 days in the Non-Renewal and Cancellation Conditions is changed to 60 days.

The countersignature of a duly authorized Agent of this Company is not required for this policy to be valid.

**State Farm Insurance Companies**
One State Farm Plaza
Bloomington, Illinois 61710

Case 2:18-cv-00539-NJ   Filed 04/06/18   Page 39 of 53   Document 1   Exhibit A

(CONTINUED)

# FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT

**DEFINITIONS**

In all policies, the following definition is added:

"fungus" means any type or form of fungi, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**SECTION I - LOSSES NOT INSURED**

In SPECIAL FORM 3 policies only, item 1.j. is replaced by the following:

j. rust, or wet or dry rot;

The following is added to item 2. of Losses Not Insured in SPECIAL FORM 3 policies or under Losses Not Insured in BASIC MODIFIED REPLACEMENT COST - FORM 1 policies:

Fungus, including the growth, proliferation, spread or presence of fungus, and including:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by fungus;

(2) any remediation of fungus, including the cost or expense to:

(a) remove or clean the fungus from covered property or to repair, restore or replace that property;

(b) tear out and replace any part of the building or other property as needed to gain access to the fungus;

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the fungus; or

(d) remove any property to protect it from the presence of or exposure to fungus;

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

**SECTION II - EXCLUSIONS**

In all policies, the following exclusion is added to item 1.:

l. any:

(1) bodily injury, personal injury, or property damage arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any fungus at or from any source or location; or

(2) loss, cost or expense arising out of any:

(a) request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate or dispose of or in any way respond to or assess the effects of fungus; or

(b) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of fungus.

All other policy provisions apply.

FE-7540
(9/89)

# DEBRIS REMOVAL ENDORSEMENT

**SECTION I - ADDITIONAL COVERAGES**

Debris Removal is replaced by the following:

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property when coverage is afforded for the peril causing the loss. This expense is included in the limit applying to the damaged property.

   We will pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has damaged property covered under Coverage A.

   When the amount payable for the property damage plus the debris removal expense exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense.

**All other policy provisions apply.**

FE-7540
(9/89)

FE-5801
Page 1 of 1

# FE-5801 MANDATORY REPORTING ENDORSEMENT

The following **CONDITION** is added:

**Duties of an Injured Person – Coverage M – Mandatory Reporting.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

a.  provide us with any required authorizations; and

b.  submit to us all information we need to comply with state or federal law.

FE-5801

©, Copyright, State Farm Mutual Automobile Insurance Company, 2009

# EXHIBIT 2

**State Farm Fire and Casualty Company**
A Stock Company With Home Offices in Bloomington, Illinois

P.O. Box 82542
Lincoln, NE 68501-2542

**Named Insured**

AT2                                    H-05-6093-FABD        R  F
                    001027  0048
MOORE, CRAFTON
3949 N 24TH ST
MILWAUKEE WI  53206-1425

ᵈⁱᵈⁱⁱⁱⁱⁱⁱⁱⁱⁱⁱⁱⁱⁱⁱⁱⁱ (mailing barcode)

## DECLARATIONS PAGE

| Policy Number | 99-B7-L135-6 | |
|---|---|---|
| **Policy Period** | **Effective Date** | **Expiration Date** |
| 12 Months | JAN 24 2017 | JAN 24 2018 |

The policy period begins and ends at 12:01 am standard time at the residence premises.

---

# ENTAL DWELLING POLICY- SPECIAL FORM 3

tomatic Renewal - If the policy period is shown as 12 months, this policy will be renewed automatically subject to the miums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the rtgagees/Lienholder written notice in compliance with the policy provisions or as required by law.

ation of Premises
l3 N 13TH ST
.WAUKEE WI 53206-3049

med Insured: Individual

| verages & Property | Limits of Liability | Inflation Coverage Index: 243.0 | | |
|---|---|---|---|---|
| **Section I** | | **Deductibles - Section I** | | |
| Dwelling | $    151,000 | Basic    1% | $ | 1,510 |
| Dwelling Extension | $     15,100 | | | |
| Personal Property | $      7,550 | | | |
| Loss of Rents | Actual Loss | | | |
| | | | | |
| **Section II** | | | | |
| Business Liability | | | | |
| (Each Occurrence) | $    300,000 | In case of loss under this policy, the deductibles will be applied | | |
| Annual Aggregate | $    600,000 | per occurrence and will be deducted from the amount of the | | |
| Medical Payments | | loss. Other deductibles may apply - refer to policy. | | |
| (Each Person) | $      1,000 | | | |

| rms, Options, & Endorsements | | Policy Premium | $ | 549.00 |
|---|---|---|---|---|
| ecial Form 3 | EP-8103.3 | Discounts Applied: | | |
| ntal Dwelling Endorsement | FE-2427 | Home Alert | | |
| tual Cash Value Endorsement | FE-3650 | Utility Rating Cr | | |
| nendatory Endorsement | FE-8249.2 | | | |
| ungus (Including Mold) Excl | FE-5722 | | | |
| bris Removal Endorsement | FE-7540 | | | |
| andatory Reporting Endorsemnt | FE-5801 | | | |

――――― Other limits and exclusions may apply - refer to your policy ―――――

r policy consists of this page, any endorsements
! the policy form. Please keep these together.

8001.3C

l34   1 51  !
8,T,R          Prepared    JAN 26 2017

LEONARD CRATIC JR
414-527-4288

555-7620.1 Rev. 10-2002 (0110393ts)

# EXHIBIT 3

Exhibit A

# Incident Report
# MILWAUKEE POLICE DEPT

**170630028**  Supplement No
ORIG

2333 N. 49TH ST

Milwaukee,WI 53210

(414) 935-7502

Reported Date
**03/04/2017**
Nature of Call
**FIRE UNDT**
Officer
**MERRILL,JOSEPH W**

## Administrative Information

| Agency | | | Incident No | Supplement No | Reported Date | | Reported Time | CAD Call No |
|---|---|---|---|---|---|---|---|---|
| MILWAUKEE POLICE DEPT | | | 170630028 | ORIG | 03/04/2017 | | 05:40 | 170630542 |

| Status | | Nature of Call | | | | | | |
|---|---|---|---|---|---|---|---|---|
| REPORT TO FOLLOW | | FIRE OF UNDETERMINED CAUSE | | | | | | |

| Location | | | | | City | | ZIP Code | Rep Dist |
|---|---|---|---|---|---|---|---|---|
| 3543 N 13TH ST | | | | | MILWAUKEE | | 53206 | 2145 |

| District | Squad | From Date | | From Time | Officer | | | |
|---|---|---|---|---|---|---|---|---|
| 5 | 530 | 03/04/2017 | | 05:35 | 017104/MERRILL,JOSEPH W | | | |

| Assignment | | | 2nd Officer | | | Assignment | | Entered by |
|---|---|---|---|---|---|---|---|---|
| FIFTH DISTRICT - LATE | | | DECLEENE, SAMANTHA R | | | FIFTH DISTRICT - LATE | | 017104 |

| Assignment | | RMS Transfer | | Property? | Approving Officer | | | Approval Date |
|---|---|---|---|---|---|---|---|---|
| FIFTH DISTRICT - LATE | | Successful | | Yes | 017961 | | | 03/07/2017 |

| Approval Time | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 12:16:30 | | | | | | | | |

| PROPERTY INSURED BY | | MFD AT SCENE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| STATE FARM | | BATAL 1, RESCUE 2, MED 5, CAR 18, TRK 5 12 15, ENG 18 30 36 | | | | | | |

| MFD RANK/FULL NAME | | | | MFD SHIFT (RD,GRN,BLU) | | | | |
|---|---|---|---|---|---|---|---|---|
| BATALLION CHIEF 2, SEAN SLOWEY | | | | GREEN | | | | |

| CRIME VICT RS FM PV-17 | | PHOTOGRAPHS | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Yes | | Yes | | | | | | |

| # Offenses | Offense | | | Description | | Complaint Type | AC | Use | Bias | Loc |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | FIRE UNDT CAUSE | | | Fire of Undetermined | | D | | | | |

| #Pr | MOE | Act | Weapon/Force | | IBRS | No | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| Link | Involvement | Invl No | Name | | | | | Race | Sex | DOB | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OTH | DFB | 1 | COOK,CAMILLE | | | | | B | F | Redacted/1975 |
| OTH | POW | 1 | MOORE,CRAFTON | | | | | B | M | Redacted/1969 |
| OTH | INT | 1 | GLASS,KIWANNA L | | | | | B | F | Redacted/1988 |
| OTH | INT | 2 | WINFORY,CHARRISH L | | | | | B | F | Redacted 1988 |

## Person Summary

| Invl | Invl No | Type | Name | | MNI | Race | Sex | DOB |
|---|---|---|---|---|---|---|---|---|
| DFB | 1 | I | COOK,CAMILLE | | 3299373 | B | F | Redacted 1975 |
| POW | 1 | I | MOORE,CRAFTON | | 3098561 | B | M | Redacted/1969 |
| INT | 1 | I | GLASS,KIWANNA L | | 1682742 | B | F | Redacted 1988 |
| INT | 2 | I | WINFORY,CHARRISH L | | 3088146 | B | F | Redacted 1988 |

## Property Summary

| Involvement |
|---|
| CRM |

| Description |
|---|
| ARTICLE: STRUCTURES/SINGLE OCCUPANCY DWELLINGS HOME    fire damage, single family home, 3543 N 13th St |

## Narrative

Unoccupied single residence located at 3543 N 13th St caught fire at multiple points, which caused total damage to the building (approx. $21,000.00). MFD suspected the fire to be caused by electrical failure in the residence.

| Report Officer | Printed At | |
|---|---|---|
| 017104/MERRILL,JOSEPH W | 05/31/2017 11:18 | Page 1 of 3 |

# Incident Report

**170630028**

Supplement No
**ORIG**

## MILWAUKEE POLICE DEPT

### DISCOVERED FIRE BY 1: COOK,CAMILLE

| Involvement | Invl No | Type | Name | | MNI |
|---|---|---|---|---|---|
| DISCOVERED FIRE BY | 1 | INDIVIDUAL | COOK,CAMILLE | | 3299373 |

| Race | Sex | DOB | Age | Ethnicity | Juvenile? |
|---|---|---|---|---|---|
| BLACK/AFRICAN AMERICAN | FEMALE | [Redacted]1975 | 41 | NOT HISPANIC/LATINO | No |

Res Status
**RESIDENT**

| Type | Address | City | State |
|---|---|---|---|
| HOME | 3610 N 14TH ST | MILWAUKEE | WISCONSIN |

ZIP Code
**53206**

| Phone Type | Phone No |
|---|---|
| CELL | (414)418-0828 |

### PROPERTY OWNER - NonReportable Fire Only 1: MOORE,CRAFTON

| Involvement | Invl No | Type |
|---|---|---|
| PROPERTY OWNER - NonReportable Fire Only | 1 | INDIVIDUAL |

| Name | MNI | Race | Sex |
|---|---|---|---|
| MOORE,CRAFTON | 3098561 | BLACK/AFRICAN AMERICAN | MALE |

| DOB | Age | Ethnicity | Juvenile? | Res Status |
|---|---|---|---|---|
| [Redacted]1969 | 47 | NOT HISPANIC/LATINO | No | RESIDENT |

| Type | Address | City | State |
|---|---|---|---|
| HOME | 3949 N 24TH ST | MILWAUKEE | WISCONSIN |

ZIP Code
**53206**

| Phone Type | Phone No |
|---|---|
| CELL | (414)344-8571 |

### INTERVIEW 1: GLASS,KIWANNA L

| Involvement | Invl No | Type | Name | | MNI |
|---|---|---|---|---|---|
| INTERVIEW | 1 | INDIVIDUAL | GLASS,KIWANNA L | | 1682742 |

| Race | Sex | DOB | Age | Ethnicity | Juvenile? |
|---|---|---|---|---|---|
| BLACK/AFRICAN AMERICAN | FEMALE | [Redacted]1988 | 28 | NOT HISPANIC/LATINO | No |

| Height | Weight | Hair Color | Eye Color | Res Status |
|---|---|---|---|---|
| 5'11" | 185# | BLACK | BROWN | RESIDENT |

| Type | Address | City | State |
|---|---|---|---|
| HOME | 3537 N 13TH ST | MILWAUKEE | WISCONSIN |

ZIP Code
**53206**

| Phone Type | Phone No |
|---|---|
| CELL | (414)766-4528 |

### INTERVIEW 2: WINFORY,CHARRISH L

| Involvement | Invl No | Type | Name | | MNI |
|---|---|---|---|---|---|
| INTERVIEW | 2 | INDIVIDUAL | WINFORY,CHARRISH L | | 3088146 |

| Race | Sex | DOB | Age | Ethnicity | Juvenile? |
|---|---|---|---|---|---|
| BLACK/AFRICAN AMERICAN | FEMALE | [Redacted]1988 | 28 | NOT HISPANIC/LATINO | No |

| Height | Weight | Hair Color | Eye Color | Res Status |
|---|---|---|---|---|
| 5'09" | 200# | BLACK | BROWN | RESIDENT |

| Type | Address | City | State |
|---|---|---|---|
| HOME | 3537 N 13TH ST | MILWAUKEE | WISCONSIN |

ZIP Code
**53206**

| Phone Type | Phone No |
|---|---|
| CELL | (715)803-3858 |

### Property

| Item | Involvement | Invl Date | In Custody? | Value |
|---|---|---|---|---|
| 1 | OBJECT OF A CRIME | 03/04/2017 | No | $21,000.00 |

Description
**fire damage, single family home, 3543 N 13th St**

| Typ | Cat | Article |
|---|---|---|
| A | STRUCTURES/SINGLE OCCUPANCY DWELLINGS | HOME |

UCR Type
**STRUCTURES - SINGLE OCCUP DWELLING**

| Link | Involvement | Invl No | Name | Race | Sex | DOB |
|---|---|---|---|---|---|---|
| OTH | DFB | 1 | COOK,CAMILLE | B | F | [Redacted]1975 |

| Report Officer | Printed At | |
|---|---|---|
| 017104/MERRILL,JOSEPH W | 05/31/2017 11:18 | Page 2 of 3 |

# Incident Report
# MILWAUKEE POLICE DEPT

## Property

| Link | Involvement | Invl No | Name | Race | Sex | DOB |
|------|-------------|---------|------|------|-----|-----|
| OWN | FOW | 1 | MOORE, CRAFTON | B | M | Redact '1969 |
| OTH | INT | 1 | GLASS, KIWANNA L | B | F | Redact '1988 |
| OTH | INT | 2 | WINFORY, CHARRISH L | B | F | Redacte 1988 |

## Modus Operandi

| Gang Act? | Gang Name | Person/Prop Attacked | | Physical Evidence |
|-----------|-----------|----------------------|--|-------------------|
| No | NONE | STRUCTURE - SINGLE DWELLING | | PHOTOS |

| Weapon Used | Premise Type | Crime Code(s) |
|-------------|--------------|---------------|
| FIRE/INCENDIARY DEVICE | RESIDENTIAL-HOUSE | ARSON |

## Supplement

On Sat., 03-04-17, at 5:35 AM, I (P.O. Joseph MERRILL, SQD 5330 with P.O. Samantha DECLEENE) was dispatched to a house fire at 3545 N 13th St. Upon arrival, I observed the single-family residence at 3543 N 13th St to be the house on fire.

While on scene, I spoke with Battalion Chief Sean SLOWEY, who stated the fire was a One alarm fire, and appeared to be caused by defective electric in the residence. Chief SLOWEY stated the fire started at multiple points in the first floor wall, and caused a total loss to the house (approximately $21,000.00). The following MFD units, green shift, were on scene:
- Battalion Chief 1, Battalion Chief 2
- Rescue 2
- Med 5
- Car 18
- Truck 5, 12, 15
- Engine 18, 30, 36

I then spoke with the caller, Camille COOK, B/F, Redac 75, who stated she was at her home (3610 N 14th St) and smelled smoke. She stated she then went outside and drove around the block, locating the fire at 3543 N 13th St. She stated she then knocked on the door to see if any occupants were in the house. COOK stated there was no answer, so she then knocked at 3537 N 13th St. She stated the residents came out at 3537 N 13th St and stated that 3543 was vacant.

I also spoke with the occupants of 3537 N 13th St. I first spoke with Charrish L WINFORY, B/F, Redac 88, who stated she was asleep and did not notice the fire until she woke up.

The other occupant in 3537 was identified as, Kiwanna L GLASS, B/F, Redac 88. GLASS stated that she had returned home approximately 5 minutes before COOK knocked on her door. GLASS stated she was picking up her nieces to take them back to their home, and did not notice anything unusually at the house next door (3543). She stated she did not see smoke either, when she arrived. GLASS also stated that the residence on fire was unoccupied and had not seen anyone at the house for awhile. GLASS mentioned that on Friday, 03-03-17, she noticed the kitchen light at 3543, flickering on and off. She also noticed the bathroom light flickering on and off and observed it stay on. She did not notice anyone near the house.

I also spoke with the owner of the house, who arrived later on scene. He was identified as, Crafton MOORE, B/M, Redac 69. MOORE stated he had been working on the house for the next tennants and had just left at approximately 10:30 PM, 03-03-17. MOORE stated that his last tenant was evicted (GRANDY, Lillian L B/F, Redac 88), and moved out 03-01-17. He stated the residence was currently unoccupied, and there was no property in the house. MOORE stated he just finished work on the house, and the new tenants had just made rent payment. He also stated that his insurance on the residence was with State Farm.

Forensic Investigator, SQD 1720 (Sylvia ORTIZ), responded on scene and took 37 digital photos at 7:55 AM.

| Report Officer | Printed At | |
|----------------|-----------|--|
| 017104/MERRILL, JOSEPH W | 05/31/2017 11:18 | Page 3 of 3 |

# EXHIBIT 4



January 25, 2018

State Farm Insurance Companies
PO Box 52258
Phoenix, AZ 85072-2258

Crafton Moore
3949 N 24th St
Milwaukee, WI 53206-1425

**SENT VIA REGULAR AND CERTIFIED MAIL- RETURN RECEIPT REQUESTED**

RE:  Named Insured:  Crafton Moore
     Claim Number:    49-9W10-651
     Policy Number:   99-B7-L-135-6
     Date of Loss:    3/4/2017

Dear Mr. Moore:

State Farm Fire and Casualty Company conducted an investigation of this claim submitted as a result of the fire that occurred on or about March 4, 2017 at your property 3543 N 13th St, Milwaukee, WI.

We advised you in writing of our questions of coverage under a reservation of rights letter on March 29, 2017 outlining the following:

- There is a question as to whether the origin and cause of the loss was accidental in nature.
- There is a question whether you or any person insured under this policy caused or procured a loss to property covered under this policy for the purpose of obtaining insurance benefits.
- There is a question whether you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

Additionally, we reserved all other rights for any other reasons which may become known, including the right to deny coverage in its entirety.

The insurance policy provides, in part, as follows:

### SECTION I - LOSSES INSURED

### COVERAGE A – DWELLING

We cover:

1. the dwelling on the **residence premises** shown in the **Declarations** used principally as a private residence, including structures attached to the dwelling;

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

## SECTION I - LOSSES INSURED

## COVERAGE A - DWELLING AND COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to the property described in Coverage A and Coverage B, except as provided in Section I - Losses Not Insured.

## SECTION I – CONDITIONS

**8. Suit Against Us.** No action shall be brought unless there has been compliance with all the policy provisions. The action must be started within one year after the date of loss or damage.

**14. Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

## SECTION I AND SECTION II – CONDITIONS

**2. Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

This letter will serve as formal notice that claim payment is denied in its entirety based on the violations of the Intentional Acts and Concealment or Fraud conditions of the policy as our investigation concludes this was not an accidental loss to you, and you have concealed or misrepresented material facts or circumstances related to this loss.

2

By specifying the above reasons for denial, State Farm Fire and Casualty Company does not intend to waive, but specifically reserves all of its rights, including other defenses which may be applicable to this claim.

If you have any questions regarding this matter, please do not hesitate to contact claim specialist John Perreault at 253-459-8909.

Sincerely,

Scott Phillips
Team Manager - Special Investigative Unit
253-459-8911

State Farm Fire and Casualty Company

3

# EXHIBIT 5

**StateFarm**

STATE FARM FIRE AND CASUALTY COMPANY

P.O. Box 82542
Lincoln, NE 68501-2542

# ACKNOWLEDGMENT OF
# CANCELLATION REQUEST

```
           0231        H-05- 6093-FABD        F R
MOORE, CRAFTON
3949 N 24TH ST
MILWAUKEE WI  53206-1425
```

Rental Dwelling Pol - Special Form

| POLICY NUMBER: 99-B7-L135-6 |
|---|
| DATE CANCELED: MAR 04 2017 |

RETURN PREMIUM: $261.51
To: [X] INSURED   [ ] MORTGAGEE   [ ] OTHER

Dear Policyholder,

As requested, this policy has been canceled effective 12:01 a.m. (or the time which is required by state law) as of the Date Canceled shown above. We thank you for giving us the opportunity to provide this insurance.

**Location:**
3543 N 13TH ST
MILWAUKEE WI

**Agent:** LEONARD CRATIC JR
**Telephone:** (414) 527-4288

DATE PROCESSED
FEB 06 2018

524-127.2 09-18-2014 (o1fi223c)

---

**StateFarm STATE FARM FIRE AND CASUALTY COMPANY**
P.O. Box 82542
Lincoln, NE 68501-2542

US BANK, N.A.
ST. PAUL, MN

75-1502/912
**505 194026**

POLICY NUMBER 99-B7-L135-6          DATE FEB 06 2018

IN PAYMENT OF  RETURN PREM   259-00

$ *****261.51

TWO HUNDRED SIXTY ONE DOLLARS AND 51 CENTS

PAY TO THE
ORDER OF:
MOORE, CRAFTON        H-6093-FABD      F R
3949 N 24TH ST
MILWAUKEE WI  53206-1425

PRESIDENT

TREASURER

COMPANY LOGO WATERMARK APPEARS ON BACK. HOLD AT 45° ANGLE FOR VIEWING. DO NOT CASH IF MISSING.

⑈0550194026⑈ ⑆091215972⑆152⑈000111113⑈