UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CRAFTON MOORE, | ) |
| | ) Case No.: 18-CV-00539 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE FARM FIRE AND | ) |
| CASUALTY COMPANY | ) |
| Defendant. | ) |

**STATE FARM FIRE AND CASUALTY COMPANY'S BRIEF IN SUPPORT OF MOTION FOR BIFURCATION AND STAY OF DISCOVERY ON BAD FAITH CLAIM**

Defendant State Farm Fire and Casualty Company ("State Farm"), by its attorneys, Meissner Tierney Fisher & Nichols, hereby submits this Brief in Support of its Motion For Bifurcation and Stay of Discovery on Bad Faith Claim.

## INTRODUCTION

The above titled action arises out of State Farm's denial of coverage for damages Plaintiff Crafton Moore incurred as the result of a March 4, 2017 fire. Plaintiff has asserted causes of action for breach of contract, promissory estoppel, and bad faith. Following the fire, State Farm obtained an origin and cause report that determined gasoline had been poured down the inside of the walls of Moore's property. Additionally, Moore made numerous inconsistent and conflicting statements regarding repairs to the Property and a supposed tenant that was planning to rent the structure. Consequently, State Farm denied the claim in accordance with the policy language.

In this Motion, State Farm respectfully requests that, pursuant to the well-settled Wisconsin procedure, this Court bifurcate the breach of contract and promissory estoppel claims (collectively the "breach of contract claims") and stay the proceedings, including discovery, as to the bad faith claim. Wisconsin courts—both state and federal—have held that the preferred procedure in such cases is to bifurcate the breach of contract from the bad faith claim and place a stay on the bad faith claim until resolution of the breach of contract issue. This procedure is favored because litigating the two causes of action simultaneously creates a myriad of discovery and protection issues; creates a significant risk of juror confusion; and supports judicial economy. Indeed, because a valid breach of contract is a pre-requisite to a bad faith claim, courts conclude such a claim must be proven before the parties and court engage in expensive and protracted bad faith litigation. Consequently, State Farm requests that the Court follow that preferred procedure and bifurcate Plaintiff's breach of contract claims from the bad faith claim, and stay discovery on the bad faith claim until resolution of the breach of contract claims.

## FACTS

### A. The Fire and State Farm's Investigation.

The basic facts of this case are straightforward. Mr. Moore owns numerous rental properties throughout Milwaukee—one of which was located at 3543 N. 13th Street, Milwaukee, WI 53206 (the "Property"). (Compl. ¶ 3). On January 24, 2017, Moore obtained a Rental Dwelling Policy with State Farm for the Property. (*Id*. Ex. A). Just over a month later—on March 4, 2017—the Property was damaged by a fire. (*Id*. ¶ 6). At the time of that incident, the property was vacant, and Moore informed State Farm he was in the process repairing damage caused by a recently evicted tenant. (*See id*. ¶ 8).

Following the fire, State Farm commissioned an origin and cause investigation. (Malloy Aff. Ex. B). That investigation determined that the fire was incendiary. (*Id*. at 8). Among other discoveries, the fire investigator and electrical engineer determined that gasoline had been poured into the wall cavities from the second story in what was most likely an attempt to create an appearance of an electrical fire. (*Id*.). Additionally, debris samples were collected and tested positive for gasoline. (*Id*.).

The origin and cause report was combined with the fact that Moore had exclusive access to the property. He testified in his Examination Under Oath that he (1) recently changed the locks; (2) was the only individual with keys to the property; and (3) was certain the property was locked at the time of the fire. (Malloy Aff. Ex. C at 68:23–24; 69:16–18; 70:7–17). Indeed, Milwaukee Fire Department records reflect that the house was secured at the time of the fire.

Additionally, Moore made false statements during State Farm's investigation.[1] By way of example, he informed State Farm that he had already secured a new tenant for the Property, Jennifer Williams. However, Williams's statements conflicted dramatically with Moore's. For example, Moore informed State Farm that he had met Williams through a friend named "T-bone." (Malloy Aff. Ex. D at 8:226–232). Williams, by contrast, informed State Farm that Moore was a friend of her family. (Malloy Aff. Ex. E at 1:22–26). Additionally, Williams stated she viewed the property once on March 2, 2017, it was in beautiful condition, freshly painted, and the carpeting had been replaced. (*Id*. at 105–114). By contrast, Moore originally testified that Williams viewed the Property on March 2, 2017. (Malloy Aff. Ex. C at 74:10–20). However, Moore originally stated he did not paint or replace carpeting until March 3, 2017. (*Id*. at 82:1–7). He also testified that he was still working on the Property when Williams viewed it

---

[1] Moore gave numerous inconsistent and conflicting statements during the course of State Farm's investigation. State Farm's discussion of certain of these misrepresentations should not be deemed a waiver of the same.

on March 2, 2017, and he had tools and materials all over the Property. (*Id*. at 85:24–87:4). Finally, he testified that Williams did not sign the lease at the Property; rather, Moore traveled to Williams' workplace on March 3, 2017 to have her sign the lease.

When confronted with Williams' statement, Moore reversed course, claiming that after signing the lease at her workplace, Williams also drove back to the Property to view it again on March 3, 2017 while he was painting. (*Id*. at 93:21–96:13). Indeed, he testified that he remembered this new detail because Williams almost got wet paint on her. (*Id*.). Moore was then reminded that he had testified he did not put in the carpeting until after he finished painting. (*Id*. at 97:16–98:1). Undeterred, Moore then recalled that after signing the lease he had returned to the Property, done all the painting, then installed all the carpeting before the paint dried, and then Williams arrived to view the finished product. (*Id*. at 98:2–10).

**B.    State Farm's Policy of Insurance**

State Farm insured Moore under a Rental Dwelling Policy, Policy Number 99-B7-L135-6, (the "Policy"). The Policy provides, among other things, coverage for fire property damage, subject to the terms, conditions, exclusions, and limitations contained within the policy. The Policy specifies, in part:

**SECTION I - LOSSES INSURED**

**COVERAGE A – DWELLING**

> We cover:
>
> 1. the dwelling on the **residence premises** shown in the **Declarations** used principally as a private residence, including structures attached to the dwelling;

*    *    *

(Malloy Aff. Ex. A at 7).

- 4 -

> **COVERAGE A - DWELLING AND COVERAGE B -PERSONAL PROPERTY**
>
> We insure for accidental direct physical loss to the property described in Coverage A and Coverage B, except as provided in Section I - Losses Not Insured.

(*Id*. at 10). The Policy also features the two following conditions for coverage:

> **SECTION I – CONDITIONS**
>
> **14. Intentional Acts**. If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.
>
> \* \* \*

(*Id*. at 14).

> **SECTION I AND SECTION II – CONDITIONS**
>
> **2. Concealment or Fraud**. This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

(*Id*. at 19).

State Farm has relied on these provisions to deny coverage in this case, noting that its investigation had determined: (1) the fire was not an accidental direct physical loss; (2) Moore had caused or procured a loss for the purpose of obtaining insurance benefits; and (3) Moore had made concealed or misrepresented material facts relating to the insurance.

## ARGUMENT

**I. BIFURCATION AND STAY OF DISCVOERY ON THE BAD FAITH CLAIMS SERVES A VITAL PURPOSE.**

### A. The Breach of Contract Claim Versus the Bad Faith Claim.

As noted above, Moore has brought a breach of contract simultaneously with his bad faith claim. These claims are very different. The former involves a simple contract question, requiring application of the surrounding circumstances to the plain provisions of the State Farm Policy. In this case, the simple analysis will be whether Moore directly, or through another,

- 5 -

Active\08277\0014\2029183.v1-4/9/18
Case 2:18-cv-00539-NJ   Filed 04/11/18   Page 5 of 10   Document 9

intentionally caused the March 4, 2017 fire and/or whether Moore made misrepresentations during State Farm's investigation.

Furthermore, if a fact finder (on motion or trial) determines that Moore caused the fire or made misrepresentations, there is no coverage and the entire case will end because a breach of contract is "a fundamental prerequisite" to bringing a bad faith claim. *Brethorst v. Allstate Property and Casualty Company*, 2011 WI 41, ¶ 65, 334 Wis. 2d 23, 798 N.W. 2d 467; *Shalock v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 950548 (E.D. Wis. Mar. 11, 2014).

The bad faith claim is more complicated, requiring analysis of claims handling practices of State Farm, and specifically the handling of Moore's claim. In order to recover for bad faith, Moore must establish **both** (1) a lack of reasonable basis for denial of the claim; and (2) that the insurer knew of or recklessly disregarded the lack of reasonable basis to deny the claim. *Brethorst*, 2011 WI 41, ¶ 49. Applied to the instant case, Moore will need to prove—by clear satisfactory and convincing evidence—that neither (1) the origin and cause report, nor (2) his conflicting statements, provided State Farm with a reasonable basis to deny the claim, and that State Farm knew or willfully disregarded the lack of reasonable basis to deny the claim. [2]

### B. Wisconsin and Federal Law Supports Bifurcation and Stay.

Federal courts apply federal procedural law to issues of bifurcation and stay, whereas Wisconsin state law governs the substance of the claims. *See Klonowski v. Int'l Armament Corp.*, 17 F.3d 992, 995 (7th Cir. 1994). Thus, numerous federal courts—including Courts of this district—have looked to the reasoning of Wisconsin courts and granted bifurcation and stay of the bad faith claim. *E.g. Ratajczak v. Beazley Solutions Ltd.*, 2014 WL 3057158 (E.D. Wis. July 7, 2014); *Poznanski v. Pennsylvania Life Ins. Co.*, 2011 WL 2634406 (E.D. Wis. July 5,

---

[2] Frankly, the facts presented on this Motion (i.e. the origin and cause report and Moore's conflicting statements) may be enough to create the "reasonable basis" for denial needed to defeat the bad faith claim. That inquiry, however, is best left for another day.

2011); *Winter v. Liberty Mut. Fire Ins. Co.*, 2006 WL 2711804 (E.D. Wis. Sept. 21, 2006); *Shalock*, 2014 WL 950548.

Given the distinct differences between the claims, courts have advocated that breach of contract and bad faith-related claims not be tried together, but rather in phases. *Dahmen v. American Family Mutual Insurance Company*, 2001 WI App 198, 247 Wis. 2d 541, 635 N.W. 2d 1. Specifically, when there are simultaneous claims of breach of contract and bad faith, the preferred procedure under Wisconsin law is for the trial court to bifurcate the claims and stay discovery on the bad faith claim until the contract claim is resolved. *Id*. ¶ 1.

Three policy considerations support this course of action. First, the failure to bifurcate claims would unfairly prejudice the insurer because the scope of bad faith discovery is significantly more expansive than what is allowed for breach of contract actions. *Id*. ¶¶ 12–16. Specifically, if both claims could be pursued at the same time, Moore may be entitled to discovery of State Farm's work product regarding the handling of the claim, information that would not be discoverable to the insured if it only proceeded on a claim for breach of contract. *Id*. ¶ 13. Second, litigating the claims together would increase the potential for jury confusion. *Id*. ¶ 17. The risk of jury confusion is particularly relevant given the different standards, varying burdens of proof, and overlapping evidence for each claim.[3] The *Dahmen* court cautioned that "[e]ven the best-intentioned and properly instructed jury might not maintain the discipline to discern between the two claims." *Id*. Third, bifurcation enhances the interest of judicial economy and potential settlement. *Id*. ¶ 19. Because breach of contract is a prerequisite for bad faith, if is determined that State Farm did not breach the Policy provisions, then the bad faith

---

[3] The two claims have different burdens of proof, with the bad faith claim having the "middle" burden of "clear satisfactory and convincing evidence;" while the contract action proceeds under the ordinary burden of "greater weight of the credible evidence to reasonable certainty." *See* WI JI Civ. 2761 (2012) 200 (2004), 205 (2012).

claim would be dismissed as well. *Id*. These considerations parallel Fed. R. Civ. P. 42(b), which allows a court to bifurcate "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ."

## II. THE BENEFITS OF BIFURCATION AND STAY IN THIS CASE.

### A. Discovery and litigation protection concerns.

Bifurcation and stay is necessary to prevent prejudice in the discovery process. As noted above, the bad faith claim require an analysis of State Farm's claim handling activities and investigation, specifically the thoughts, analysis, and internal discussions that led to its decisions regarding the Moore's claim. As the *Dahmen* court clearly stated, that material is protected work product and should not be disclosed in the contract action. The court aptly summarized:

> In litigating a claim of bad faith, the Dahmens will be entitled to discovery of American Family's work product and attorney/client material containing information relevant as to how the Dahmens' claim was handled. This information would include American Family's internal determination to deny benefits, its evaluation as to how a jury may value the Dahmens' claim and its approach to settlement. This information would not be available to the Dahmens if they were proceeding solely on a claim for UIM benefits.

*Dahmen*, 2001 WI App 198, ¶ 13. *See also Poznanski*, 2011 WL 2634406. Bifurcation eliminates this possibility and the resulting prejudice entirely. This factor is particularly relevant in the present case because no discovery has yet taken place.

The few cases that have declined to stay discovery on bad faith have done so solely on situations where discovery of breach of contract and discovery regarding bad faith overlapped and were thus duplicitous. *See Shalock,* 2014 WL 950548 (noting cases where bifurcation threatened to prolong resolution of the case). Here, no such concerns are present. The discovery—and resolution—of the breach of contract claim will turn entirely on Moore's actions. By contrast, discovery on the bad faith claim will look solely to the internal handling by State Farm. There is no need to wander into the prolonged discovery on the bad faith claim if the initial discovery reveals no breach of contract.

### B. Potential Juror Confusion.

Moreover, bifurcation will limit the potential for juror confusion. If these claims are tried together, a jury would be asked to weigh different standards and apply different burdens of proof to overlapping sets of facts. As the *Dahmen* court warned, such an endeavor goes far beyond the ordinary experience of the typical juror; bifurcation will remove that likelihood of juror confusion. *Dahmen,* 2001 WI App 198, ¶¶ 17, 20.

### C. Judicial Economy

Finally, bifurcation will surely promote judicial economy. If the Moore does not prevail on the breach of contract claim, there is no need for discovery or litigation on the bad faith claim. The breach of contract claim relates to a simple inquiry—did Moore cause the fire or make misrepresentations during State Farm's investigation? Discovery on the claims will be short, and a trial would last no more than two days. By contrast, the bad faith claim will require expert testimony (and expert discovery) and will likely take significantly longer to reach trial and resolve. Before this Court and the parties expend the time and resources necessary to litigate the bad faith claim, they should follow the preferred approach and first determine whether there has been a breach of the State Farm Policy before engaging in discovery on a claim that may not even be viable at the end of the day.

### **CONCLUSION**

For the foregoing reasons, State Farm Fire and Casualty Company respectfully requests that this Court issue:

  a.  an order bifurcating the breach of contract claim and the promissory estoppel claim from the bad faith claim; and

  b.  an order staying discovery of the bad faith claim until resolution of the breach of contract and promissory estoppel claims.

Dated this 11th day of April, 2018.

              MEISSNER TIERNEY FISHER & NICHOLS S.C.

|  |  |
|---|---|
| | s/Mark D. Malloy |
| **Mailing Address**: | Mark D. Malloy |
| 111 E. Kilbourn Ave., 19th Fl. | State Bar No: 1035066 |
| Milwaukee, WI 53202 | mdm@mtfn.com |
| Phone: 414-273-1300 | Joshua J. Bryant |
| Fax: 414-273-5840 | State Bar No: 1095175 |
| | jjb@mtfn.com |
| | **Attorneys for Defendant,** |
| | **State Farm Fire and Casualty Company** |